```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND

JAKIA EXUM, on her behalf and on :
behalf of all others similarly
situated                         :

     v.                          :   Civil Action No. DKC 24-1425

                                 :
KEVIN IAN KANE, ESQ., et al.
                                 :
```

**MEMORANDUM OPINION**

This is a putative class action brought by Plaintiff Jakia Exum ("Plaintiff") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, against Kevin Ian Kane, Esq. ("Mr. Kane") and Offit Kurman, PA. ("Offit Kurman"), and pursuant to the Maryland Consumer Debt Collection Act, Md. Code Ann., Comm. § 14-201, and the Maryland Consumer Protection Act, Md.Code Ann., Comm., § 13-101, against BDMG Crestleigh Owner, LLC ("Crestleigh," and collectively, "Defendants").  Plaintiff, a former tenant of an apartment owned by Crestleigh, contends that its property was unlicensed at the time Defendants took rent collection actions in violation of federal and state law.  Presently pending are the motion to dismiss filed by Mr. Kane and Offit Kurman (ECF No. 9), and the motion to dismiss filed by Crestleigh (ECF No. 19).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss filed by Mr. Kane and Offit Kurman will be

granted, and the remaining state law claims against Crestleigh will be dismissed without prejudice because the court declines to exercise supplemental jurisdiction over them.

I. Background[1]

Crestleigh "owns and manages Crestleigh Apartments, an approximately 389-unit residential apartment complex" in Prince George's County, Maryland. (ECF No. 1 ¶ 8). Plaintiff is a former tenant of Crestleigh Apartments ("the Property"). (ECF No. 1 ¶ 9). Offit Kurman is a Maryland corporation with "a substantial debt collection practice, filing hundreds, if not thousands, of landlord/tenant collection actions each year." (ECF No. 1 ¶ 5). Mr. Kane is an attorney in Maryland who "provid[es] debt collection services for Maryland landlords, filing hundreds, if not thousands, of landlord/tenant collection actions each year," and he "has been employed as a 'principal'" at Offit Kurman since May 2023. (ECF No. 1 ¶¶ 5, 7).

The Prince George's County Code Section 13-181(a) requires that rental facilities be licensed.[2] The licensing status of a rental property can be checked on Prince George's County's website.

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff.

[2] Crestleigh contends that § 13-181(a) does not apply. Instead, as the new owner of an already licensed property, § 13-186 applies and that section, it contends, does not prohibit a landlord from operating a rental facility prior to obtaining a valid license. (ECF No. 19-1).

(ECF No. 1 ¶¶ 12-13). Plaintiff alleges that the Property was not licensed between September 10, 2021, and June 29, 2023. (ECF No. 1 ¶ 14). Plaintiff asserts that on September 10, 2021, the previous owner of the Property, Crestleigh Holdings LLC, sold the Property "to a consortium led by Defendant Crestleigh." (ECF No. 1 ¶ 15). Under Prince George's County Code Section 13-186(a), a license "is not transferable and terminates upon change of ownership." A new owner can continue to operate the rental property if it applies for a new license within thirty days of settlement. Prince George's County Code § 13-186(b). Plaintiff alleges that Crestleigh did not apply for a new license within the required timeframe, and the Property "remained unlicensed for almost two years." (ECF No. 1 ¶ 15).

Plaintiff contends that Crestleigh knew or should have known that the Property required a license and that it did not have one. (ECF No. 1 ¶ 16). Nevertheless, Crestleigh did not notify the tenants that the Property was unlicensed "and that rent could not be collected." (ECF No. 1 ¶ 17). Instead, "Crestleigh aggressively continued to pursue rent from tenants" while the Property was unlicensed. (ECF No. 1 ¶ 17).

Plaintiff rented a unit of the Property starting on February 1, 2023. (ECF No. 1 ¶ 18). Plaintiff alleges that her apartment "had numerous health and safety issues, including unsanitary ceilings and walls and leaking faucets in the bathroom, and

3

Defendant Crestleigh was issued code citations." (ECF No. 1 ¶ 19). Because of these problems, Plaintiff attempted to withhold rent to induce Crestleigh to repair the problems. Plaintiff alleges that "Defendant Crestleigh would then engage in aggressive collection efforts regarding the alleged balance." (ECF No. 1 ¶ 20). Plaintiff alleges that "Defendant Crestleigh's illegal collection efforts included sending e-mails requesting payment, calling . . . Plaintiff, and providing Notices of Intent to File a Complaint for Summary Ejectment on no fewer than two occasions to . . . Plaintiff, all while the Property was unlicensed." (ECF No. 1 ¶ 21). Plaintiff contends that she "made several payments in response to those unlawful collection efforts by Defendant Crestleigh." (ECF No. 1 ¶ 22).

On May 16, 2023, Mr. Kane and Offit Kurman filed a failure to pay rent action ("FTPR")[3] against Plaintiff on behalf of Defendant Crestleigh for $2,060.00 for Plaintiff's rent from March and April 2023 ("First FTPR"). (ECF No. 1 ¶ 23). Plaintiff alleges that in the complaint, Defendants acknowledged that Crestleigh needed to be licensed, but Defendants falsely claimed that the Crestleigh

---

[3] A so-called "failure to pay rent" or "summary ejectment" action is a landlord's statutory right of action codified in section 8-401 of the Real Property Article of the Maryland Code. *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 431 (2022). A landlord may not "file an action against a tenant to recover unpaid rent that is attributable to the period when the property was not licensed." *Id.*, at 401.

4

was licensed. Plaintiff alleges that Mr. Kane and Offit Kurman provided the license number "L2018111575610." Plaintiff contends that "based on the licensing conventions of Prince George's County," the license would have been issued in 2018 and not have been valid when the First FTPR was filed. Plaintiff alleges that on September 5, 2023, Defendants voluntarily dismissed the First FTPR. (ECF No. 1 ¶ 24).

On June 23, 2023, Mr. Kane and Offit Kurman filed a second failure to pay rent action against Plaintiff on behalf of Crestleigh for $1,975.00 for Plaintiff's rent incurred in June and going forward in July 2023 ("Second FTPR"). Plaintiff contends that "the vast majority" of the alleged rent obligation from June 2023 was incurred while Crestleigh was unlicensed. Plaintiff alleges that Defendants again "falsely stated that the Property was licensed and provided a license number of 'L2018111575610,' which could not have been a valid license. (ECF No. 1 ¶ 25). Plaintiff alleges that "[a]s sophisticated debt collectors," Mr. Kane and Offit Kurman "knew or should have known that the 'L2018111575610' license number they were providing to the courts would not be valid." (ECF No. 1 ¶ 26).

Plaintiff alleges that she was not aware that the Property was unlicensed from September 10, 2021, to June 29, 2023, including when the Second FTPR was filed. Plaintiff asserts that she "agreed to a consent judgment allowing Defendants to evict her if she did

5

not pay an amount that included the $1,975.00 in alleged rental obligations" from June 2023. "When . . . Plaintiff did not pay the amount in time, she was evicted." (ECF No. 1 ¶ 27). Plaintiff contends that Defendants have not returned any rent tenants paid while the Property was unlicensed, and Defendants "continue to pursue any unpaid rent from tenants" from that time. (ECF No. 1 ¶ 28).

Plaintiff filed a putative class action on May 15, 2024, against Mr. Kane and Offit Kurman for violations of 15 U.S.C. § 1692 Fair Debt Collection Practices Act ("FDCPA"), and against Crestleigh for violations of the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA"). (ECF No. 1). Plaintiff proposes three classes. The proposed classes are "[a]ll tenants of any Unlicensed Property who were sued in a failure-to-pay-rent case or otherwise had collection efforts directed towards them with respect to Unlicensed Rent" by either Mr. Kane or Offit Kurman within one year of the filing of the law suit, and "[a]ll tenants of any Unlicensed Property who, within three years of the filing of this lawsuit, did not timely make one or more rental payments for Unlicensed Rent had collection activities directed towards them by" Crestleigh, "or its agents or affiliates regarding the Unlicensed Rent, including providing past due notices, telephone calls asserting an unpaid balance, notices of intent to file failure to pay rent actions, or the filing of

failure to pay rent actions." (ECF No. 1, at 7-8). Plaintiff asserts federal question jurisdiction over the FDCPA claim and supplemental jurisdiction over the state law claims. On August 1, 2024, Mr. Kane and Offit Kurman filed a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), failure to state a claim under Fed.R.Civ.P. 12(b)(6), insufficiency of process under Fed.R.Civ.P. 12(b)(5), or in the alternative for summary judgment. (ECF No. 9). On August 15, 2024, Plaintiff filed a response in opposition to Mr. Kane and Offit Kurman's motion to dismiss. (ECF No. 10). On August 29, 2024, Mr. Kane and Offit Kurman filed a reply in support of their motion to dismiss. (ECF No. 12). On January 21, 2025, Crestleigh filed a motion to dismiss. (ECF No. 19). On February 11, 2025, Plaintiff filed a response in opposition. (ECF No. 22). On February 28, 2025, Crestleigh filed a reply in support of its motion to dismiss or in the alternative for summary judgment. (ECF No. 31).

## II. Standing for the FDCPA Claims

Mr. Kane and Offit Kurman, who are sued only under the FDCPA, contend that Plaintiff (and members of the proposed classes) fail to allege facts demonstrating standing to bring that action.

> The issue of standing may be challenged on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) because it challenges a court's authority to hear the matter. The plaintiff bears the burden of proving that subject matter jurisdiction

7

exists. *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). When a defendant challenges subject matter jurisdiction facially, as here, the plaintiff "is afforded the same procedural protection" as under Fed.R.Civ.P. 12(b)(6). *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017) (quotation omitted). "[T]he motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

*Straubmuller v. Jetblue Airways Corp.*, No. 23-CV-384-DKC, 2023 WL 5671615, at *1 (D.Md. Sept. 1, 2023). Furthermore:

> Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish standing, a plaintiff bears the burden of establishing: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

*Straubmuller*, 2023 WL 5671615, at *2.

Mr. Kane and Offit Kurman argue that Plaintiff lacks standing because Plaintiff has not alleged a particular or concrete injury necessary to allege an injury in fact. (ECF No. 9, at 4-6).[4] They note that the First FTPR was voluntarily dismissed, and Plaintiff

---

[4] Crestleigh belatedly adopts these standing arguments in its Reply. (ECF No. 31, at 2). It argues that Plaintiff (and putative class members) have not shown a legally cognizable injury that was proximately caused by Crestleigh. It argues that any claimed unlicensed condition did not cause them to suffer an actual injury or loss, and that a statutory or code violation by itself is not sufficient.

did not suffer any injury from the First FTPR. (ECF No. 9, at 5). They then argue that the Second FTPR resulted in a consent judgment, and Plaintiff was only evicted after she failed to pay the amount she agreed to in the consent judgment. (ECF Nos. 9, at 5-6; 12, at 8-9).

They also contend that she has not alleged causation because she acknowledges that she was not evicted until she failed to pay rent for July, as well as for pre-licensed time in June. (ECF No. 9, at 6-7). Specifically, Plaintiff acknowledges that she was evicted for failing to pay her rent, "including rent that was incurred when the [a]partment was properly licensed." (ECF No. 9, at 7). As stated by Mr. Kane and Offit Kurman, according to the complaint, the Property was allegedly unlicensed until June 29, 2023, and the Second FTPR included rent from June and July 2023. (ECF No. 9, at 7). Accordingly, even if they were unable to file an action for rent through June 28, 2023, it was permissible to file an action for rent from the licensed period starting June 29, 2023. (ECF No. 9, at 7). Thus, "[t]he fact that the Second FTPR included June rent is irrelevant because it was only after [Plaintiff] failed to pay her July 2023 rent that she was evicted." (ECF No. 9, at 7). Mr. Kane and Offit Kurman contend that accordingly, Plaintiff has not alleged an injury "that is fairly traceable to the challenged conduct of Offit Kurman, i.e., filing the First FTPR or the Second FTPR." (ECF No. 9, at 7).

9

Finally, Mr. Kane and Offit Kurman contend that Plaintiff fails to show that there is a "non-speculative likelihood that the alleged injury would be redressed by a favorable decision," citing *Justice 360 v. Stirling*, 42 F.4th 450, 459 (4th Cir. 2022), because she seeks rent voluntarily paid, if any, and any payment would not have been made to them.

Plaintiff responds, albeit in a conclusory fashion, to each of these arguments.  For "concrete" harm, she contends that being subject to a public allegation that she did not pay her debts, particularly when it results in an eviction, is indicative of harm caused by Mr. Kane and Offit Kurman and is redressable by an award of statutory damages.

Plaintiff focuses her argument on the injury requirement of standing, only arguing that "[t]here is no question regarding the second and third prongs of the standing analysis."  She states that the "[t]he harm was caused by Defendants Offit Kurman and Kane, who filed the collection lawsuit" and "the harm is redressable by the Court—the FDCPA provides for actual damages and statutory damages even in the absence of actual damages." (ECF No. 10, at 13).

This court has previously explained that:

> A concrete injury is "'real,' and not 'abstract.'" *Spokeo, Inc. v. Robins*, 136 S.Ct 1540, 1548 (2016). While tangible harms such as physical and monetary harms constitute sufficiently concrete injuries in fact,

10

> intangible harms can also be concrete. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021).
>
> . . . .
>
>      . . . While a legislature may elevate previously existing harms to actionable status, it may not enact an injury into existence. *See* [*TransUnion*, 141 S.Ct.] at 2204-05 (citing *Spokeo*, 578 U.S. at 341). Courts must independently decide whether a plaintiff has suffered a concrete harm because a plaintiff cannot automatically satisfy the injury in fact requirement whenever there is a statutory violation. *TransUnion*, 141 S.Ct. at 2205 ("[U]nder Article III, an injury in law is not an injury in fact.").

*Straubmuller*, 2023 WL 5671615, at *2.  Under Maryland law,

> [W]here a municipality or county enacts a rental license law, which conditions the performance of a residential lease upon the issuance of a rental license, a landlord may not file an action against a tenant to recover unpaid rent that is attributable to the period when the property was not licensed.

*Assanah-Carroll*, 480 Md. at 401.  In *Zambali v. Shulman Rogers, P.A.*, a recent case with largely similar facts, Judge Gallagher dismissed the case for lack of standing.  No. 23-CV-03194-SAG, 2024 WL 3161590, at *4 (D.Md. June 25, 2024).  In *Zambali*, the plaintiff alleged that the owner and property manager defendants collected rent while the property was unlicensed, and that the defendant law firm brought two failure to pay lawsuits against the plaintiff to collect unpaid rent accrued while the rental was unlicensed.  2024 WL 3161590, at *1-2.  The defendant law firm eventually voluntarily dismissed both cases.  *Id*. at *2.  The plaintiff brought suit against the law firm under the FDCPA, as

well as state law claims against the law firm, the owner, and the property manager. *Id.* at *1.

Judge Gallagher found that the plaintiff's FDCPA claim had not alleged injury other than violation of the law, noting that while the defendant law firm should not have filed the cases because the plaintiff alleged the property was unlicensed, "the [c]omplaint fails to identify a single injury resulting from the lawsuits." *Id.* Judge Gallagher explained that "[the plaintiff] never alleged that he made any payments in response to those cases. There was never a judgment against [the plaintiff]. [The plaintiff] did not have to move out of the Property, nor did he allege that he incurred any fees or charges relating to the lawsuits." *Id.* Therefore, the plaintiff was arguing that he was injured because the defendant violated the law. *Id.* Because "an injury in law is not an injury in fact," the plaintiff had not alleged standing. *Id.* (quoting *TransUnion*, 141 S.Ct. at 2205).

Based on that logic, Plaintiff's claim that the filing of the suits itself constitutes a concrete injury fails.[5] But the facts alleged by Plaintiff in this case go beyond the simple violation law of filing the FTPR action. Although the First FTPR was voluntarily dismissed, the second resulted in a consent judgment. Plaintiff alleges that the eviction followed the failure to abide

---

[5] The members of the proposed classes under the FDCPA clearly lack standing. *See Zambali*, 2024 WL 3161590, at *6, n.4.

by a consent judgment, although she does not identify the subsequent legal proceedings, if any, leading to the eviction, nor does she differentiate between non-payment of pre-licensure rent incurred in June and non-payment of post-licensure rent for July. Thus, Plaintiff has potentially alleged a concrete injury in that she had "to move out of the [property]."

Despite alleging a potential concrete injury, her complaint fails to allege causation because Plaintiff has not alleged any facts to trace that "injury" to a court proceeding initiated by Mr. Kane or Offit Kurman at a time when Crestleigh was unlicensed or was seeking unpaid rent solely for a period when it was unlicensed.

In order to allege causation, a plaintiff must allege "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citation omitted).

> To satisfy standing's causation requirement, the alleged injury must be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). At the motion-to-dismiss stage, this burden is "relatively modest," *Bennett v. Spear*,

13

>520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), and lower than the causation showing required to prevail in a tort suit, *Nat. Res. Def. Council, Inc. v. Watkins,* 954 F.2d 974, 980 n.7 (4th Cir. 1992) (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990)). "Proximate causation is not a requirement of Article III standing ...." *Lexmark* [*Int'l, Inc. v. Static Control Components*], 572 U.S. [118,] [ ] 134 n.6, 134 S.Ct. 1377 [(2014)].
>
>Even so, a plaintiff's injury is not fairly traceable to the defendant's action if the plaintiff "independently caused his own injury." *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020); *cf. Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 667, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (injuries to plaintiff-states were "self-inflicted" so they could not bring an original-jurisdiction suit in the Supreme Court).

*DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022).

In *Zambali*, while the court found that the plaintiff failed to allege an injury from the lawsuits, it went on to state that, even if there was an injury, the plaintiff's only harm was the rent he paid while the property was unlicensed, and the plaintiff alleged that he paid the rent in response to the owner and manager's efforts. 2024 WL 3161590 at *6. Additionally, the plaintiff paid that rent to the owner and manager, not the law firm. Therefore, "even if there can be a relationship between being subjected to an unlawful lawsuit and injury from the wrongful use of civil proceedings, [the plaintiff] fails to allege it in a way traceable to [the law firm]." *Id.*

14

Here, although Plaintiff may have alleged an injury because "she was evicted," she does not allege that Mr. Kane and Offit Kurman evicted her, or that they were involved in the eviction in any way. Moreover, Plaintiff does not allege that she was evicted solely because of her failure to pay rent from the unlicensed period. On the contrary, Plaintiff acknowledges that the Second FTPR was an action to collect unpaid rent from both June and July 2023, meaning rent from when the Property was unlicensed, and rent from when the Property was licensed. (ECF No. 1 ¶ 25). Therefore, Plaintiff has not sufficiently alleged "a causal connection" between her eviction and the Second FTPR.

Furthermore, Plaintiff had not alleged the final element of standing, namely redressability. Her complaint seeks "actual damages as provided for in the FDCPA, 15 U.S.C. s 1692k(a)(1), in an amount equal to all amounts paid by [plaintiff and class members] after . . . [Mr.] Kane and/or Offit Kurman filed a failure-to-pay rent action or otherwise engaged in collection activity towards them with respect to rent attributable [sic] the period that the relevant property was unlicensed." Even were those "damages" recoverable, and they likely are not, they would not be due from Mr. Kane and Offit-Kurman. (ECF No. 1, at 12). Most importantly, those damages have nothing to do with the only potentially concrete injury alleged by the individual Plaintiff,

15

i.e., that she had to move out of the apartment. She has failed to allege redressability.

Plaintiff has failed to allege two of the elements necessary for Article III standing. Therefore, this court lacks jurisdiction to hear Plaintiff's FDCPA claim, and her FDCPA claim will be dismissed.

### III. State Law Claims

Plaintiff has not asserted diversity jurisdiction. Now that the only federal claim has been dismissed, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). This case is at the earliest stage of adjudication and the state law claims present potentially difficult and complicated questions of state law. Therefore, the court declines to exercise supplemental jurisdiction and the state law claims against Crestleigh will be dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Mr. Kane and Offit Kurman will be granted. The court declines to exercise supplemental jurisdiction over the remaining state law

claims against Crestleigh and those claims will be dismissed without prejudice.  A separate order will follow.

                                                            /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge